**John T. Devlin, OSB No. 042690**
john@johndevlinlaw.com
DEVLIN LAW, P.C.
1212 SE Spokane Street
Portland, OR 97202
Telephone: (503) 228-3015
Facsimile: (503) 660-4079

Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| CATHERINE LEFEBRE,<br><br>                Plaintiff,<br>    v.<br><br>JEFFERSON COUNTY, an Oregon county; MADRAS MEDICAL GROUP, P.C., an Oregon corporation; THOMAS MANNING, M.D., an individual; SHAWN WINSOR, an individual; and SUSAN PUDDY, an individual,<br><br>                Defendants. | Civil Action No. 3:19-cv-1040<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (42 USC § 1983) AND SUPPLEMENTAL STATE CLAIMS**<br><br>**DEMAND FOR TRIAL BY JURY** |

### INTRODUCTION

1. On July 14, 2017, Catherine LeFebre (then age 31) was booked into the Jefferson County Jail. When she was booked into the jail, Ms. LeFebre was taking two powerful mental health medications – Depakote and Risperdal. She initially continued to receive those medications in the jail. On July 21, 2017, the jail medical staff discontinued all of her medications in response to an allegation that Ms. LeFebre had concealed one of her medications during a medical pass. Ms. LeFebre did not receive her medications for

more than a month, even though she repeatedly raised concerns about her mental health and her need for the medications. On August 24, 2017, the jail medical staff started Ms. LeFebre on the same dosages of her medications because she was going to be transferred to an inpatient drug treatment facility. She remained in the jail for another week, then she traveled to the treatment facility. She only took the prescribed doses of her medications. Shortly after arriving at the treatment facility, Ms. LeFebre was taken to the hospital and diagnosed with an overdose of Depakote. She remained in the ICU for two days and could have died from the overdose. If the jail medical staff had not discontinued her Depakote, or if the jail medical staff had restarted her Depakote at a lower dose, then Ms. LeFebre would not have suffered a Depakote overdose.

## JURISDICTION AND VENUE

2.     This action arises under the constitution and laws of the United States and jurisdiction is based on 28 USC § 1331 and 28 USC § 1343(a). This Court has pendent jurisdiction of the state law negligence claims pursuant to 28 USC § 1367.

## PARTIES

3.     Plaintiff Catherine LeFebre is a citizen and a resident of the State of Oregon.

4.     Jefferson County is an Oregon county. Jefferson County operates the Jefferson County Jail through the Jefferson County Sheriff's Office.

5.     Madras Medical Group, P.C. is an Oregon corporation.

6.     Dr. Thomas Manning is a doctor licensed by the State of Oregon. At all times relevant, Dr. Manning was the Jail Physician for the Jefferson County Jail. On information

Page 2 – FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

and belief, he is a citizen and resident of the State of Oregon.

7. At all times relevant, Dr. Manning was an agent of Madras Medical Group, P.C., actual or implied, acting within the course of his agency.

8. At all times relevant, Dr. Manning was an agent of Jefferson County, actual or implied, acting within the course of his agency.

9. Shawn Winsor is a registered nurse who was employed by Jefferson County to work in the Jeffferson County Jail. At all times relevant, Ms. Winsor was the Jail Nurse Supervisor at the Jefferson County Jail. On information and belief, she is a citizen and resident of the State of Oregon.

10. Susan Puddy is a registered nurse who was employed by Jefferson County to work in the Jefferson County Jail. On information and belief, she is a citizen and resident of the State of Oregon.

## FACTUAL ALLEGATIONS

11. The Jefferson County Jail houses pretrial detainees and persons convicted of crimes. Jefferson County is obligated by state and federal law to provide medical care for persons lodged in the Jefferson County Jail. Jefferson County's duty to provide medical care is a non-delegable duty.

12. On July 12, 2017, Crook County Sheriff's Office Deputy Jacob Childers arrested Catherine LeFebre for an alleged parole violation. Deputy Childers took Ms. LeFebre to the Crook County Jail, where she was booked into custody.

13. Crook County rents beds from the Jefferson County Jail to house inmates

who are in the custody of Crook County.

14. On July 14, 2017, Ms. LeFebre was transferred from the Crook County Jail to the Jefferson County Jail. During her medical screening, the screener noted that Ms. LeFebre was taking Depakote and other medications.

15. Ms. LeFebre had been booked into the Jefferson County Jail on previous occasions, including earlier in 2017. Her jail medical file had information regarding her prescribed medications, including Depakote (aka Divalproex) and Risperdal (aka Risperidone). Her jail medical file also indicated that Ms. LeFebre had been diagnosed with: (1) schizoaffective disorder, bipolar type; (2) panic anxiety syndrome; and (3) insomnia.

16. On July 14, 2017, Ms. Winsor consulted with Dr. Manning about Ms. LeFebre's medications. Ms. Winsor documented Dr. Manning's orders that Ms. LeFebre should receive: (1) 500mg of Divalproex (aka Depakote) twice a day; (2) 1 mg of Risperidone (aka Risperdal) in the morning and 2 mg of Risperidone (aka Risperdal) in the evening; and (3) 25 mg of Doxepin in the evening.

17. Depakote is a medication used to treat bipolar disorder, seizures and migraines. Risperidone is a medication used to treat schizophrenia. Doxepin is a medication used to treat anxiety, depression and insomnia.

18. The jail medical records indicate that Ms. LeFebre received the medications ordered by Dr. Manning from July 14, 2017 to July 21, 2017.

19. On July 21, 2017, Ms. Puddy alleged that Ms. LeFebre had concealed her

Page 4 – FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

medications during a medical pass. Ms. Puddy wrote the following note in Ms. LeFebre's medical chart: "All meds DC'd [due to] concealing medications during med pass. Consulted [with] provider who concurred on action and formally ordered meds stopped. Contacted Crook County Nurse and gave reports."

20.     That same day, Ms. Puddy completed a medication form stating: "DC all meds [due to] concealing medication." On July 27, 2017, Dr. Manning signed this form without making any changes.

21.     Ms. LeFebre did not receive any of her prescribed medications from July 21, 2017 to August 7, 2017.

22.     There was no medical justification for failing to give Ms. LeFebre her prescribed medications from July 21, 2017 to August 7, 2017.

23.     Depakote has the following warning: "Do not stop taking Depakote without first talking to your healthcare provider. Stopping Depakote suddenly can cause serious problems."

24.     On July 26, 2017, Ms. LeFebre met with Shelly Hood of Lutheran Community Services Northwest ("LCSNW"). They disussed efforts to get Ms. LeFebre into an inpatient drug treatment program. Ms. LeFebre told Ms. Hood that she "was not getting her mental health meds" because she had used another inmate's pill to sleep. Ms. LeFebre told Ms. Hood that she was not feeling right and wanted to take her medications.

25.     On August 3, 2017, Ms. LeFebre met with Rob Prentice of LCSNW. They disussed efforts to get Ms. LeFebre into an inpatient drug treatment program. Ms. LeFebre

Page 5 – First Amended Complaint for Violation of Civil Rights and Suppl. State Claims

"expressed concern that her mental health symptoms will worsen during incarceration."

26. On August 7, 2017, Ms. LeFebre was released from the Jefferson County Jail on a 48-hour furlough.

27. On August 9, 2017, Ms. LeFebre was arrested after she failed to report to the Jefferson County Jail at the end of her furlough. She was booked into the Crook County Jail, then transferred to the Jefferson County Jail that same day.

28. On August 10, 2017, someone from the Jefferson County Jail completed a Medical Screening Report for Ms. LeFebre. This screening form noted that Ms. LeFebre was taking Depakote and Risperdal.

29. Ms. LeFebre was not given any of her prescribed medications from August 9, 2017 to August 24, 2017.

30. There was no medical justification for failing to give Ms. LeFebre her prescribed medications from August 9, 2017 to August 24, 2017.

31. On August 15, 2017, Ms. LeFebre met with Terri McBride of LCSNW. Ms. LeFebre "looked depressed as evidenced by hanging her head down and not looking at" Ms. McBride. They discussed efforts to get Ms. LeFebre into an inpatient drug treatment program. Ms. LeFebre told Ms. McBride that "she is still not on her medications. The head nurse Shawn [Winsor] is on vacation until 8/20 and a decision on the medications will not happen until then." Ms. McBride said that she would "try to get her medications reinstated by contacting Crook County nurses and possibly Linda Hatch, FNP, the medical director of the Crook County Jail." Ms. LeFebre told Ms. McBride that she was "concerned

Page 6 – FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

if she doesn't start her medications, she will have a 'breakdown' and 'won't get into a place.'" Ms. LeFebre also told Ms. McBride that "[s]he is afraid of what might happen if she stays off her medications for too long."

32. On August 19, 2017, Ms. LeFebre got into a fight with another inmate, who said that Ms. LeFebre was "off her meds" and arguing with people in their pod. On August 23, 2017, Ms. LeFebre pled guilty to two rule violations, including fighting, and was placed on lockdown for 15 days.

33. On August 23, 2017, Ms. LeFebre met with Ms. Hood of LCSNW. Ms. LeFebre "had some marks on her face and said that without meds she is feeling 'a bit irritable.'" Ms. LeFebre told Ms. Hood that "she was still not receiving her mental health medications and that she was having symptoms, such as irritability."

34. That same day, Ms. LeFebre met with Jim Atwood of Independence Place, which runs an inpatient drug treatment program in Harney County, Oregon. Ms. LeFebre had been accepted into the inpatient program at Indepdence Place, and the target date for admission was August 31, 2017.

35. On August 24, 2017, Trevor Hostetler, a registered nurse working in the jail, restarted Ms. LeFebre on all three of her medications: (1) 500mg of Divalproex (aka Depakote) twice a day; (2) 1 mg of Risperidone (aka Risperdal) in the morning and 2 mg of Risperidone (aka Risperdal) in the evening; and (3) 25 mg of Doxepin in the evening. Mr. Hostetler indicated on a medication form that Dr. Manning gave a telephone order to restart the medications. On the form, someone wrote: "OK to restart as inmate in getting

into MH/[drug] tx."

36. Ms. LeFebre received the medications ordered by Dr. Manning from August 24, 2017 to August 31, 2017.

37. On August 25, 2017, Rhonda Belanger of Crook County Community Corrections approved the early release of Ms. LeFebre to an inpatient drug treatment program.

38. On August 31, 2017, Ms. Simone and Ms. Hood of LCSNW transported Ms. LeFebre from the Jefferson County Jail to Independence Place. They noted that Ms. LeFebre "showed appreciation and excitement for being placed in treatment. Client was pleasant but also showed signs of being tired and sleepy."

39. At approximately 5:15 PM on August 31, 2017, Ms. LeFebre met with Mr. Atwood of Indepdence Place, who welcomed her to the program. Ms. LeFebre said that "she was happy to be in the program." Mr. Atwood encouraged Ms. LeFebre "to rest and to get some sleep."

40. On September 1, 2017, at approximately 8:15 pm, a caseworker from Independence Place took Ms. LeFebre to the emergency room at Harney County Hospital. The caseworker reported that Ms. LeFebre kept saying that she was feeling "high but not the good kind of high" and had slept for most of the day. Upon admission to the ER, Ms. LeFebre had a little bit of slurred speech and was sleepy.

41. Dr. Spencer Clarke at Harney County Hospital attempted to figure out the cause of Ms. LeFebre's sleepiness, which became worse during her stay. Dr. Clarke ran

some tests, including a CT scan, an EKG and a spinal tap, to try to find a cause for her altered mental status. Dr. Clarke intubated Ms. LeFebre because he was concerned about her ability to breathe on her own. Ultimately, a decision was made to transfer Ms. LeFebre to the ICU at St. Charles Medical Center in Bend.

42. At approximately 10:00 pm, Mr. Atwood from Independence Place called Catherine Byrem of LCSNW "to advise that [Ms. LeFebre] was taken to the hospital after becoming sluggish and then becoming incoherent. [Ms. LeFebre] was transported by helicopter to Bend and has been placed in the ICU."

43. Ms. LeFebre was taken by AirLink to St. Charles, where she presented with "[a]cute delirium with obtundation and failure to protect airway" and was admitted to the ICU. Ms. LeFebre was diagnosed with an unintentional overdose of Depakote. She remained in the hospital until September 4, 2017, when she was discharged back to Independence Place.

44. Dr. Stephen Goins, a neurologist, treated Ms. LeFebre at St. Charles. He diagnosed her with valproate-induced hyperammonemia. Depakote is a valproate. Hyperammonemia is an excess of ammonia in the blood. Hyperammonemia can cause encephalopathy. The valproate-induced hyperammonemia was caused by an unintentional overdose of Depakote.

45. Ms. LeFebre only took the prescribed doses of Depakote that were given to her by the staff at the Jefferson County Jail and then by the staff at Independence Place.

Page 9 – FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

## FIRST CLAIM FOR RELIEF

### Civil Rights Claim – 8th and/or 14th Amendment – 42 USC § 1983

46. Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through 45, above.

47. Defendants Manning, Winsor and Puddy were deliberately indifferent to Ms. LeFebre's rights under the Eighth and/or Fourteenth Amendments of the U.S. Constitution in that said defendants:

   a. Stopped her prescribed mental health medications without a medical justification;

   b. Stopped her prescribed mental health medications as a form of punishment; and

   c. Failed to provide adequate medical care for her serious medical needs.

48. As a direct result of the actions and inactions of defendants as set forth in paragraph 47, above, Catherine LeFebre suffered a deterioration in her mental health, leading to physical and mental distress. Ms. LeFebre is entitled to noneconomic damages in whatever amount the jury concludes is appropriate.

49. Plaintiff is entitled to her necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

## SECOND CLAIM FOR RELIEF

Civil Rights Claim – 8th and/or 14th Amendment – 42 USC § 1983

### *Monell* Claims

50. Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through 49, above.

51. The moving forces that resulted in the deprivation of Catherine LeFebre's Eighth and/or Fourteenth Amendment rights were the following policies, customs or practices of Jefferson County:

    a. A policy, custom or practice of stopping prescribed medications without a medical justification;

    b. A policy, custom or practice of stopping prescribed medications as a form of punishment; and

    c. A policy, custom or practice of failing to provide adequate medical care for the serious medical needs of people being held in the Jefferson County Jail.

52. The policies of defendant Jefferson County posed a substantial risk of causing substantial harm to Jefferson County inmates, and Jefferson County were aware of the risk.

53. As a direct result of the policies, customs or practices of Jefferson County, Catherine LeFebre suffered a deterioriation in her mental health, leading to physical and mental distress. Ms. LeFebre is entitled to noneconomic damages in whatever amount the

jury concludes is appropriate.

54.  Plaintiff is entitled to her necessary and reasonable attorney fees and costs incurred in the prosecution of this action.

### THIRD CLAIM FOR RELIEF

#### Negligence

55.  Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through 54, above.

56.  The actions of defendants Jefferson County, Madras Medical Group, and each of them, were negligent in one or more of the following particulars:

   a. In stopping Catherine LeFebre's prescribed mental health medications without a medical justification;

   b. In stopping Catherine LeFebre's prescribed mental health medications as a form of punishment; and

   c. In failing to provide Catherine LeFebre with adequate medical care for her serious medical needs.

57.  As a direct result of the actions and inactions of defendants as set forth in paragraph 56, above, Catherine LeFebre suffered a deterioriation in her mental health, leading to physical and mental distress.  Ms. LeFebre is entitled to noneconomic damages in whatever amount the jury concludes is appropriate.

58.  Notice pursuant to the Oregon Tort Claims Act was given to defendant Jefferson County within the time prescribed by law.  Although plaintiff does not consider

Page 12 – FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND SUPPL. STATE CLAIMS

Madras Medical Group entitled to notice under the Oregon Tort Claims Act, notice was also provided to Madras Medical Group within the time prescribed by law.

## FOURTH CLAIM FOR RELIEF

### Negligence

59. Plaintiff realleges and incorporates herein as though set forth in full paragraphs 1 through 58, above.

60. The actions of defendants Jefferson County, Madras Medical Group, and each of them, were negligent in one or more of the following particulars:

   a. In restarting Catherine LeFebre's prescribed medications at the same dosages after stopping them for more than 30 days;

   b. In restarting Catherine LeFebre's prescribed medications without monitoring her for hyperammoneia after stopping them for more thsn 30 days; and

   c. In restarting Catherine LeFebre's prescribed medications in a manner that caused her to suffer an overdose of that medication.

61. As a direct result of the actions and inactions of defendants as set forth in paragraph 60, above, Catherine LeFebre suffered an overdose of Depakote. Ms. LeFebre incurred substantial medical expenses, endured physical and mental distress, and nearly died. Ms. LeFebre is entitled to economic damages in the sum of $83,859.98 and noneconomic damages in whatever amount the jury concludes is appropriate.

62.  Notice pursuant to the Oregon Tort Claims Act was given to defendant Jefferson County within the time prescribed by law.  Although plaintiff does not consider Madras Medical Group entitled to notice under the Oregon Tort Claims Act, notice was also provided to Madras Medical Group within the time prescribed by law.

WHEREFORE, Plaintiff prays for judgment as follows:

**On their First Claim for Relief**, for judgment against defendants Manning, Winsor and Puddy, and each of them, for noneconomic damages in whatever amount the jury concludes is appropriate, and for necessarily and reasonably incurred attorney fees and costs;

**On their Second Claim for Relief**, for judgment against defendant Jefferson County, for noneconomic damages in whatever amount the jury concludes is appropriate, and for necessarily and reasonably incurred attorney fees and costs;

**On their Third Claim for Relief**, for judgment against defendants Jefferson County, Madras Medical Group, and each of them, for noneconomic damages in whatever amount the jury concludes is appropriate, and for necessarily and reasonably incurred costs; and

**On the Fourth Claim for Relief**, for judgment against defendants Jefferson County, Madras Medical Group, and each of them, for economic damages in the sum of $83,859.98, for noneconomic damages in whatever amount the jury concludes is appropriate, and for necessarily and reasonably incurred costs.

DATED this 10th day of September, 2019.

        DEVLIN LAW, P.C.

        /s/ John T. Devlin
        John T. Devlin
        Oregon State Bar No. 042690

        Of Attorneys for Plaintiff

Plaintiff demands Trial by Jury.

DATED this 10th day of September, 2019.

        DEVLIN LAW, P.C.

        /s/ John T. Devlin
        John T. Devlin
        Oregon State Bar No. 042690

        Of Attorneys for Plaintiff